## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

UNITED STATES, COMMONWEALTH OF
MASSACHUSETTS, DISTRICT OF
COLUMBIA, STATE OF CALIFORNIA,
STATE OF MARYLAND, STATE OF NEW
JERSEY, STATE OF NEW YORK, AND
STATE OF NORTH CAROLINA,

                *Plaintiffs-Appellees,*

    v.

JETBLUE AIRWAYS CORPORATION, AND
SPIRIT AIRLINES INC.,

          *Defendants-
          Appellants.*

No. 24-1092

## PLAINTIFFS-APPELLEES' OPPOSITION TO DEFENDANTS-
## APPELLANTS' PROPOSED SCHEDULE

Appellants' motion to expedite threatens to rush the briefing of a

complex appeal covering a wide range of findings below, which were

themselves the result of a 17-day trial with a record exceeding 10,000

pages and the testimony of 22 witnesses. As Appellants acknowledge,

this Court's opinion may become an important First Circuit merger

precedent—here, involving how to assess the anticompetitive impacts of

a proposed $3.8 billion dollar acquisition that would eliminate the

benefits of competition from a low-cost airline serving millions of people every year. Appellees (the United States, Commonwealth of Massachusetts, District of Columbia, State of California, State of Maryland, State of New Jersey, State of New York, and State of North Carolina) therefore request sufficient time to respond thoroughly to Appellants' initial brief. Appellees anticipate they will be able to do so with 30 more days than the schedule Appellants propose. Specifically, Appellees request that any briefing schedule set by the Court provide Appellees at least 60 days to respond to Appellants' initial brief.

Appellants seek an expedited briefing schedule to satisfy a self-imposed deadline in their merger agreement that they can extend by mutual agreement. But the public interest is not served by rushing due deliberation of the important issues at stake in this appeal by the Court or by the multiple government Appellees enforcing Section 7 of the Clayton Act to protect the flying public.

1. This appeal follows a 17-day trial on the merits of Appellees' antitrust challenge to JetBlue's proposed acquisition of Spirit. On January 16, 2024, the District Court issued a lengthy and comprehensive decision concluding that the proposed acquisition

violates Section 7 of the Clayton Act, which prohibits mergers and acquisitions where "the effect of such acquisition may be substantially to lessen competition." 15 U.S.C. § 18. The District Court carefully examined the extensive trial record and—after weighing all the evidence—found that the proposed acquisition "would substantially lessen competition." Dkt. 461 ("Op.") at 107. The District Court thus enjoined the proposed transaction, Op. 107-108, and entered judgment for Appellees, Dkt. 463.

2. Appellants filed their notice of appeal on January 19, 2024. Dkt. 464. On January 29, 2024, Appellants moved to expedite the briefing of their appeal. Motion to Expedite Consideration of the Appeal ("Mot."). Under Appellants' proposed schedule, Appellants' initial brief would be due February 26, 2024—41 days after the District Court's opinion; Appellees' brief in response would be due just 30 days later, on March 27, 2024; and Appellants' reply would be due 15 days later, on April 11, 2024. Mot. 3.[1] Appellants argue that this expedited

---

[1] Appellants note that their initial brief would be due 28 days after the docketing of this appeal, Mot. 3, but it is 41 days from the date that the District Court entered its opinion. In the meet-and-confer process, Appellants proposed filing their opening brief by February 21, 2024, *see*

3

schedule is necessary "so that a decision may be issued before July 24, 2024," a deadline contained in their merger agreement.  *Id.* at 3, 12.

3.  In their merger agreement, Appellants JetBlue and Spirit made a business decision to allow either party to terminate the agreement on July 24, 2024, if the proposed acquisition had not yet been consummated.  *See* Ex. B (Excerpt from Merger Agreement) at 7.1(e).  These so-called "outside dates" are often renegotiated by merging parties to provide more time for reviewing courts.  *See Publicis Commc'n v. True North Commc'ns*, 132 F.3d 363, 367 (7th Cir. 1997) (noting that merging parties "can renegotiate the closing date if they really want to carry through with the merger" despite approaching "drop-dead date").[2]  Indeed, Appellants' merger agreement expressly

---

Email from Ryan Shores to Edward Duffy, et al. (Jan. 23, 2024, 11:35 ET) (Ex. A), but subsequently extended this deadline to February 26, 2024, in their motion (while keeping Appellees' response time at 30 days from Appellants' brief).

[2] *E.g.*, *Change Healthcare and Optum Extend Merger Agreement*, UNITEDHEALTH GROUP (Apr. 5, 2022), at https://www.unitedhealthgroup.com/newsroom/2022/2022-04-05-change-healthcare-optum-extend-merger.html (noting agreement to extend merger to allow time for litigation); *AT&T, Time Warner extend merger deadline until June*, REUTERS (Dec. 22, 2017), at https://www.reuters.com/article/idUSKBN1EG1TW (same); Leslie

4

allows them to change this date by "mutual written agreement."  Ex. B. at 7.1(e).  Moreover, even under Appellants' proposed schedule, there is no guarantee that the matter would be fully resolved by July 24, 2024, so renegotiation of that deadline may be needed in any event for JetBlue's acquisition of Spirit to proceed.

4.  Appellants' expedition request underscores Appellees' need for sufficient time to prepare their response brief.  Appellants' request does not rule out seeking to file an oversized brief and does not limit the issues that they will raise on appeal.  While Appellants identify a number of issues they assert provide substantial grounds for appeal, at the same time they indicate this list is non-exhaustive and may be expanded in their merits briefing.  Mot. 9-11.  Appellees will need time to prepare their responses to these and any other issues Appellants may raise.

5.  Appellees agree with Appellants that this appeal "presents an opportunity for the First Circuit to provide guidance for future

_____

Small, *Aetna, Humana extend merger deadline again*, FIERCE HEALTHCARE (Dec. 23, 2016), at https://www.fiercehealthcare.com/payer/aetna-humana-extend-merger-deadline-again (same).

transactions." Mot. 9. Precisely for that reason, it would not be in the public interest to short-circuit either the parties' presentation or the Court's consideration of the matter to satisfy a deadline within Appellants' control.

6. If this Court sets a briefing schedule at this time, Appellees respectfully request at least 60 days from the due date of Appellants' brief to file their brief in response. Affording Appellees 60 days to respond will facilitate careful consideration and presentation of the issues, as well as allow sufficient time for coordination among the various government co-Appellees.

7. This Court has previously granted requests for even longer briefing deadlines in order to allow adequate time to brief the issues and to satisfy relevant government processes for appeals. *See, e.g.*, Order, *United States v. DeQuattro et al.*, Nos. 23-1115, 23-1116, 23-1138, 23-1139 (1st Cir. Dec. 20, 2023) (granting United States' opposed extension request, allowing in total (across multiple extensions) a 76-day extension for a response brief from the original due date); Order, *United States et. al. v. Am. Airlines Group Inc.*, No. 23-1802 (1st Cir. Dec. 12, 2023) (granting government appellees' request for a 60-day

extension (for a total of 90 days from opening brief) for a response brief in an antitrust appeal following a merits trial challenging airlines' alliance, which JetBlue ultimately abandoned after the district court found the alliance unlawful). And, although Appellants cite several out-of-circuit merger cases in which expedited schedules have been set, those circumstances were different:

- Unlike here, in *United States v. Anthem* the appellant made "substantial sacrifices to minimize the inconvenience to the Appellees and the Court," and it "chose[] to focus its merits brief on" just one issue. Emergency Mot. of Appellant Anthem, Inc. for Expedited Consideration of Appeal, No. 17-5024, Doc. 1660924, at 1, 8 (D.C. Cir. 2017).

- Unlike here, *United States v. U.S. Sugar* did not require coordination among multiple government plaintiffs. Moreover, neither side opposed an expedited briefing schedule. *See* Emergency Mot. of United States for an Injunction Pending Appeal, No. 22-2806, Doc. 7-1, at 23 (3d Cir. 2023) ("The Government is amenable to an expedited briefing schedule."); Appellees' Opp. to Emergency Mot. for Injunction Pending Appeal, No. 22-2806, Doc. 22-1 (no objection to expedition).

- Unlike here, where the appeal follows a full trial on the merits, *FTC v. Heinz* and *FTC v. Microsoft* concerned more abbreviated preliminary-injunction determinations. *See FTC v. H.J. Heinz Co.*, 246 F.3d 708, 711 (D.C. Cir. 2001); *FTC v. Microsoft Corp.*, 2023 U.S. Dist. LEXIS 119001, *6 (N.D. Cal. 2023); *see also* Ninth Cir. R. 3-3(b) (providing expedited schedule for preliminary-injunction appeals).

8.  Appellants also suggest that expedition is warranted because they have significant substantive grounds for appeal.  Mot. 9-11.  This is incorrect.  The opinion below was thoughtful, comprehensive, and fact-bound, and appropriately concluded that JetBlue's proposed acquisition of Spirit would substantially reduce competition in violation of Section 7 of the Clayton Act.  Op. 107.  Appellants' list of purportedly substantial grounds for appeal repeatedly mischaracterizes that decision.  For example:

a.  Appellants wrongly claim that the District Court placed the burden of persuasion on them, Mot. 9-10, whereas the District Court specified that Appellants bore only "a relatively low" burden of production at the rebuttal stage (after Appellees had made out a prima facie case), Op. 65, 81-82, and that *Appellees* ultimately bore the burden of persuasion, *id.* at 65-66, 104, 107.

b.  Appellants misleadingly suggest that the District Court ignored the Clayton Act's substantiality language.  Mot. 10-11.  The District Court, in fact, cited and applied the Clayton Act's substantiality requirement throughout its opinion.  *See, e.g.*, Op. 5, 46, 62-66, 79-80, 82-84, 104-07.

8

c. Appellants wrongly suggest that the District Court failed to identify a market in which harm would occur, Mot. 11, but the District Court identified hundreds of airline routes as relevant markets, Op. 69-73, and expressly concluded that substantial anticompetitive harm was likely "in at least some of the relevant markets," Op. 105.

9. If Appellants file their opening brief by the proposed February 26, 2024, date, and the Court grants Appellees' request for at least 60 days to respond, then Appellees' brief would be due April 26, 2024, enabling oral argument in June or potentially earlier. As Appellees previously informed Appellants during the meet-and-confer process, Appellees would not oppose a request for an expedited argument date following briefing. *See* Mot. 3.

10. While this appeal is pending, JetBlue and Spirit will continue to compete just as they have for the 18 months since they first signed their merger agreement. The flying public benefits from that competition every day. Appellees respectfully request sufficient time for their response brief in order to effectively represent the public's interests in this important antitrust case.

# CONCLUSION

If this Court sets a briefing schedule, Appellees respectfully request at least 60 days from the due date of Appellants' brief to file their brief in response.

January 31, 2024

Respectfully submitted.

*s/ Andrew N. DeLaney*

JONATHAN S. KANTER
*Assistant Attorney General*

DOHA G. MEKKI
*Principal Deputy Assistant Attorney General*

HETAL J. DOSHI
*Deputy Assistant Attorney General*

MAGGIE GOODLANDER
*Deputy Assistant Attorney General*

DAVID B. LAWRENCE
*Policy Director*

ERIC D. DUNN
MARKUS A. BRAZILL
*Counsel to the Assistant Attorney General*

DANIEL E. HAAR
NICKOLAI G. LEVIN
ANDREW N. DELANEY
EDWARD W. DUFFY
ALICE A. WANG
*Attorneys*

U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
950 Pennsylvania Ave., N.W.
Room 3224
Washington, D.C. 20530-0001
Telephone: (202) 514-2414
andrew.delaney@usdoj.gov

*Attorneys for Plaintiff-Appellee
United States*

10

*s / William T. Matlack*
WILLIAM T. MATLACK
(MA Bar No. 552109)

Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
Telephone: (617) 727-2200
William.Matlack@mass.gov

*Attorney for Plaintiff-Appellee*
*Commonwealth of Massachusetts,*
*Signing on Behalf of Plaintiffs-*
*Appellees States and District of*
*Columbia*

OLGA KOGAN
New York State Office of the
Attorney General
28 Liberty Street, 20th Floor
New York, NY 10005
Telephone: (212) 416-8262
olga.kogan@ag.ny.gov

*Attorney for Plaintiff-Appellee*
*State of New York*

CAROLINE S. VAN ZILE
*Solicitor General*

JEREMY R. GIRTON
*Assistant Attorney General*

Office of the Solicitor General
Office of the Attorney General for
the District of Columbia
400 6th Street NW, Suite 8100
Washington, D.C. 20001
Telephone: (202) 724-2029
caroline.vanzile@dc.gov
jeremy.girton@dc.gov

*Attorneys for Plaintiff-Appellee*
*District of Columbia*

11

JAMIE L. MILLER
Supervising Deputy Attorney
General
Office of the California Attorney
General
455 Golden Gate Avenue, Suite
11000
San Francisco, CA 94102
Telephone: (415) 510-3565
Jamie.Miller@doj.ca.gov

*Attorney for Plaintiff-Appellee
State of California*

JESSICA V. SUTTON
Special Deputy Attorney General
North Carolina Department of
Justice
Post Office Box 629
Raleigh, NC 27602
Telephone: (919) 716-6000
jsutton2@ncdoj.gov

*Attorney for Plaintiff-Appellee
Commonwealth of North Carolina*

SCHONETTE J. WALKER
GARY HONICK
BYRON WARREN
Maryland Office of the Attorney
General
200 St. Paul Place, 19th Floor
Baltimore, MD 21202
Telephone: (410) 576-6470
swalker@oag.state.md.us
ghonick@oag.state.md.us
bwarren@oag.state.md.us

*Attorneys for Plaintiff-Appellee
State of Maryland*

ANA ATTA-ALLA
State of New Jersey – Office of
the Attorney General
Division of Law
124 Halsey Street – 5th Floor
Newark, NJ 07102
Telephone: (973) 648-6835
Ana.Atta-Alla@law.njoag.gov

*Attorney for Plaintiff-Appellee
State of New Jersey*

## CERTIFICATE OF COMPLIANCE

1.    This opposition complies with the type-volume limit of Fed.
R. App. P. 27(d)(2)(A) because it contains 1,684 words, excluding the
portions exempted by Fed. R. App. P. 32(f).

2.    This opposition complies with the typeface requirements of
Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App.
P. 32(a)(6) because it has been prepared in Microsoft Word using 14-
point New Century Schoolbook font, a proportionally spaced typeface.


                                    s/ *Andrew DeLaney*
                                    Andrew N. DeLaney
                                    *Counsel for Plaintiff-Appellee*
                                    *United States*

**CERTIFICATE OF SERVICE**

I certify that on January 31, 2024, I caused the foregoing to be filed through this Court's CM/ECF system, which will serve a notice of electronic filing on all registered users, including counsel for Defendants-Appellants.


s/ *Andrew DeLaney*
Andrew N. DeLaney
*Counsel for Plaintiff-Appellee*
*United States*

# Exhibit A

**Email from Ryan Shores to Edward Duffy, et al. (Jan. 23, 2024, 11:35 ET)**

**DeLaney, Andrew (ATR)**

| | |
|---|---|
| **From:** | Shores, Ryan <rshores@cgsh.com> |
| **Sent:** | Tuesday, January 23, 2024 11:35 AM |
| **To:** | Duffy, Edward (ATR); Briggs, John (ATR); Riblet, Sarah (ATR); Sepulveda, Brendan (ATR); Teitelbaum, Aaron (ATR); Markel, Arianna (ATR); Thornburgh, John (ATR); Cohen, Jay; Andrew C. Finch (afinch@paulweiss.com); Gelfand, David I.; Culley, Daniel P.; Kay, Joseph; Nguyen, Matt K; Wright, Elizabeth; Jessica Delbaum; Brian Hauser; DeLaney, Andrew (ATR) |
| **Subject:** | [EXTERNAL] RE: Meet and Confer - Monday |

Ed and team,

Thanks for the call yesterday.  We would appreciate hearing back from you today as we are planning to file our motion to expedite tomorrow.  We also slightly adjusted the schedule we intend to propose based on President's Day.  Specifically, we intend to propose:

Appellants' Brief – February 21
Appellees' Brief – March 22
Reply Brief – April 8

Best,
Ryan

---

**Ryan Shores**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: dnewman@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1876 | M: +1 202 431 2168
rshores@cgsh.com | clearygottlieb.com

---

**From:** Duffy, Edward (ATR) <Edward.Duffy@usdoj.gov>
**Sent:** Monday, January 22, 2024 9:25 AM
**To:** Shores, Ryan <rshores@cgsh.com>; Briggs, John (ATR) <John.Briggs@usdoj.gov>; Riblet, Sarah (ATR) <Sarah.Riblet@usdoj.gov>; Sepulveda, Brendan (ATR) <Brendan.Sepulveda@usdoj.gov>; Teitelbaum, Aaron (ATR) <Aaron.Teitelbaum@usdoj.gov>; Markel, Arianna (ATR) <Arianna.Markel@usdoj.gov>; Thornburgh, John (ATR) <John.Thornburgh@usdoj.gov>; Cohen, Jay <jaycohen@paulweiss.com>; Andrew C. Finch (afinch@paulweiss.com) <afinch@paulweiss.com>; Gelfand, David I. <dgelfand@cgsh.com>; Culley, Daniel P. <dculley@cgsh.com>; Kay, Joseph <jkay@cgsh.com>; Nguyen, Matt K <mnguyen@cooley.com>; Wright, Elizabeth <ewright@cooley.com>; Jessica Delbaum <Jessica.Delbaum@Shearman.com>; Brian Hauser <Brian.Hauser@Shearman.com>; DeLaney, Andrew (ATR) <Andrew.DeLaney@usdoj.gov>
**Subject:** RE: Meet and Confer - Monday

Ryan,
Can you talk between 2 and 4 today?

Thanks,
Ed

**From:** Shores, Ryan <rshores@cgsh.com>
**Sent:** Friday, January 19, 2024 5:27 PM
**To:** Duffy, Edward (ATR) <Edward.Duffy@usdoj.gov>; Briggs, John (ATR) <John.Briggs@usdoj.gov>; Riblet, Sarah (ATR) <Sarah.Riblet@usdoj.gov>; Sepulveda, Brendan (ATR) <Brendan.Sepulveda@usdoj.gov>; Teitelbaum, Aaron (ATR) <Aaron.Teitelbaum@usdoj.gov>; Markel, Arianna (ATR) <Arianna.Markel@usdoj.gov>; Thornburgh, John (ATR) <John.Thornburgh@usdoj.gov>; Cohen, Jay <jaycohen@paulweiss.com>; Andrew C. Finch (afinch@paulweiss.com) <afinch@paulweiss.com> Gelfand, David I. <dgelfand@cgsh.com>; Culley, Daniel P. <dculley@cgsh.com>; Kay, Joseph <jkay@cgsh.com>; Nguyen, Matt K <mnguyen@cooley.com>; Wright, Elizabeth <ewright@cooley.com>; Jessica Delbaum <Jessica.Delbaum@Shearman.com>; Brian Hauser <Brian.Hauser@Shearman.com>
**Subject:** [EXTERNAL] Meet and Confer - Monday

Counsel, As you likely saw, we filed a notice of appeal. We would like to arrange a meet and confer for Monday to discuss a proposed expedited schedule for the appeal. Could you please let us know your availability in the afternoon on Monday? Best, Ryan

---

**Ryan Shores**
Cleary Gottlieb Steen & Hamilton LLP
Assistant: dnewman@cgsh.com
2112 Pennsylvania Avenue, NW
Washington, DC 20037
T: +1 202 974 1876 | M: +1 202 431 2168
rshores@cgsh.com | clearygottlieb.com

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

This message is being sent from a law firm and may contain confidential or privileged information. If you are not the intended recipient, please advise the sender immediately by reply e-mail and delete this message and any attachments without retaining a copy.

Throughout this communication, "Cleary Gottlieb" and the "firm" refer to Cleary Gottlieb Steen & Hamilton LLP and its affiliated entities in certain jurisdictions, and the term "offices" includes offices of those affiliated entities. Our external privacy statement is available at:
https://www.clearygottlieb.com/footer/privacy-statement

# Exhibit B

**Excerpt from Merger Agreement**

JetBlue Airways Corporation
Item 3(b)-1
August 12, 2022

CONFIDENTIAL

EXECUTION VERSION

## AGREEMENT AND PLAN OF MERGER

among

**JetBlue Airways Corporation,**

**Sundown Acquisition Corp.**

and

**Spirit Airlines, Inc.**

Dated as of July 28, 2022

**EXHIBIT 32**

1:23-cv-10511

B6NK-TX-00000021

*[intervening pages omitted]*

such date (other than any representation and warranty that is expressly made as of a specific date or time, which needs only be true and correct in all respects as of such date or time), except where the failure of such representations and warranties in this clause (ii) to be so true and correct has not had and would not reasonably be expected to have, individually or in the aggregate with all other such failures to be true or correct, a Parent Material Adverse Effect.

(b)    Each of Parent and Merger Sub shall have performed and complied in all material respects with the agreements and covenants to be performed or complied with by it under this Agreement at or prior to the Closing, or any breach or failure to do so shall have been cured.

(c)    The Company shall have received a certificate of Parent, executed by an executive officer of Parent, dated as of the Closing Date, certifying that the conditions set forth in subsections (a) and (b) of this Section 6.3 have been satisfied.

## ARTICLE 7
## TERMINATION, AMENDMENT AND WAIVER

7.1    Termination.  This Agreement may be terminated, and the Merger contemplated hereby may be abandoned by action taken or authorized by the Board of Directors of the terminating party or parties, whether before or after adoption of this Agreement by the stockholders of the Company or of Merger Sub:

(a)    By mutual written consent of Parent and the Company, by action of their respective Boards of Directors, at any time prior to the Effective Time;

(b)    By either the Company or Parent, if any court of competent jurisdiction or other Governmental Entity has issued an Order or taken any other action permanently restraining, enjoining or otherwise prohibiting the Merger, which Order or other action has become final and nonappealable (which Order the party seeking to terminate this Agreement has used its reasonable best efforts to resist, resolve or lift, as applicable, as required by Section 5.5);

(c)    By Parent, if a Triggering Event has occurred;

(d)    By the Company, in connection with the Company Board's causing the Company to enter into an Alternative Acquisition Agreement with respect to a Superior Proposal in accordance with Section 5.3(f);

(e)    By Parent or the Company, if the Effective Time has not occurred on or before July 28, 2023 (the "Outside Date"); provided, however, that the Outside Date shall be automatically extended to January 28, 2024 (as so extended, the "Extended Outside Date") if the condition set forth in Section 6.1(b) (or Section 6.1(c), to the extent related to Section 6.1(b)) has not been satisfied prior to the initial Outside Date (but all other conditions to Closing are satisfied, other than those conditions that by their nature are to be satisfied at the Closing, which

B6NK-TX-00000100

conditions shall be capable of being satisfied at such time); provided, further, that the Extended Outside Date shall be automatically extended to July 24, 2024 (as so extended, the "Second Extended Outside Date"), if the condition set forth in Section 6.1(b) (or Section 6.1(c), to the extent related to Section 6.1(b)) has not been satisfied prior to the Extended Outside Date (but all other conditions to Closing are satisfied, other than those conditions that by their nature are to be satisfied at the Closing, which conditions shall be capable of being satisfied at such time); provided, further, that the Company and Parent may agree to further extend the Second Extended Outside Date by mutual written agreement; and provided, further, that the right to terminate this Agreement under this Section 7.1(e) shall not be available to any party whose failure to fulfill any agreements or covenants under this Agreement has been the principal cause of, or resulted in, the failure of the Effective Time to occur on or before such date;

(f)     By Parent, if:  (i) there is an Uncured Inaccuracy in any representation or warranty of the Company contained in this Agreement or a breach of any covenant of the Company contained in this Agreement, in any case, such that any condition to the Merger in Section 6.2(a) or Section 6.2(b) is not satisfied, (ii) Parent has delivered to the Company written notice of such Uncured Inaccuracy or breach and (iii) either such Uncured Inaccuracy or breach is not capable of cure or, if curable, has not been cured in all material respects prior to the earlier of (x) the Outside Date (as may be extended pursuant to Section 7.1(e)) and (y) the thirtieth (30th) day following the delivery of such written notice to the Company; provided, however, that Parent will not be permitted to terminate this Agreement pursuant to this Section 7.1(f) if:  (A) any covenant of Parent or Merger Sub contained in this Agreement has been breached such that the condition to the Merger in Section 6.3(b) is not satisfied; or (B) there is an Uncured Inaccuracy in any representation or warranty of Parent or Merger Sub contained in this Agreement such that the condition to the Merger in Section 6.3(a) is not satisfied;

(g)     By the Company, if: (i) there is an Uncured Inaccuracy in any representation or warranty of Parent or Merger Sub contained in this Agreement or breach of any covenant of Parent or Merger Sub contained in this Agreement, in any case, such that any condition to the Merger in Section 6.3(a) or Section 6.3(b) is not satisfied, (ii) the Company has delivered to Parent written notice of such Uncured Inaccuracy or breach and (iii) either such Uncured Inaccuracy or breach is not capable of cure or, if curable, has not been cured in all material respects prior to the earlier of (x) the Outside Date (as may be extended pursuant to Section 7.1(e)) and (y) the thirtieth day following the delivery of such written notice to Parent; provided, however, that the Company will not be permitted to terminate this Agreement pursuant to this Section 7.1(g) if:  (A) any covenant of the Company contained in this Agreement has been breached such that the condition to the Merger in Section 6.2(b) is not satisfied; or (B) there is an Uncured Inaccuracy in any representation or warranty of the Company contained in this Agreement such that the condition to the Merger in Section 6.2(a) is not satisfied; or